**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BARBARA SCOTT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2182 |
| | § | |
| FAROUK SYSTEMS, INC., | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this Fair Labor Standards Act case is a Motion for

Summary Judgment  [Doc. # 16] filed by Defendant Farouk Systems, Inc. ("Farouk").

Plaintiff Barbara Scott has responded [Doc. # 17] and Farouk replied [Doc. # 18].  Upon

consideration of the parties' arguments, the summary judgment record, and all applicable

legal authorities, Farouk's Motion is **granted in part and denied in part**.

**I.      FACTUAL BACKGROUND**

The Court draws the essential and uncontested background facts from the parties'

briefing.  Further details will be provided as necessary in the Court's analysis.

Farouk manufactures, and sells hair-care products such as "shampoos, conditioners,

styling products, finishing products, . . . . hair color products, permanent waves, hair

straightening products."[1]  It also imports and sells "hair dryers, flat irons, [and] curling irons

---

[1]      Deposition of Shauky Gulumani ("Gulumani Depo."), Exhibit A to Motion, at 11-12.
Gulumani was a sales and marketing executive with Farouk at all times relevant to this case.
*See id.*, at 9.

for both service and retail."[2] Because professional cosmetologists and hair studios are a significant consumer of Farouk's products, it makes a concerted effort to educate "salon professionals" about its wares.[3] Scott was hired as a "contract educator" in 2000; she worked as an independent contractor to conduct Farouk's educational seminars for salon professionals and to train other educators for the company.[4]

In 2003, Farouk hired Scott as a "education coordinator/technical adviser [*sic*]," a salaried position in the company's education department.[5]  Farouk had "just launched a brand-new hair care line called Deep Brilliance, which is a line that we had developed of hair care relaxers for highly textured hair."[6]  Farouk believed that Scott's experience and expertise would assist it with the development of the product and its marketing to the professional customers.[7]  In March 2004, she was given the title of Education Coordinator or Education Consultant.  Scott explains that her duties did not change significantly, but that

---

[2]     *Id.*

[3]     *Id.* at 12.

[4]     Deposition of Barbara Scott ("Scott Depo."), Exhibit B to Motion, at 33.

[5]     Scott Depo., at 34-35; Job Description Form, Exhibit C-2 to Motion.  Scott said at the deposition that she was hired as a salaried employee in 2001; this appears to be a misstatement.  *See* New Employee Information ("Employee Form"), Exhibit C-1 to Motion (reporting October 1, 2003 as the date Scott was hired as a new employee).

[6]     Gulumani Depo., at 13.

[7]     *Id.*

there were "more duties added where you would deal with the chain of account managers, budget issues and [those] kind of things . . . ."[8]

Farouk eventually decided that its existing network of distributors were poorly suited to market Deep Brilliance to the targeted consumers, and decided to form a new company or corporate initiative around the product.[9]  Farouk believed that Scott "wanted [a position with the new organization] and showed that she had the [necessary] knowledge and expertise and the background."  In May 2004, Farouk gave Scott an interim position while it restructured the company and product line.[10]  Scott's job was with the "Environmental Salon Network" ("ESN") department, where she was involved with marketing and serving as a liaison between Farouk and its client salons.[11]

In March 2005, according to Scott, Farouk appointed her to be the executive assistant to Gulumani.[12]  She worked primarily with the Deep Beauty product line.  In August 2005, Scott became Deep Beauty Account Manager for "Sally's Beauty Company."[13]  Scott denies

---

[8]     Scott Depo., at 101.

[9]     Gulumani Depo., at 17.

[10]    *Id.*

[11]    *Id.* at 18; 20.   The ESN system rewarded client salons for their business by granting them certain perks.

[12]    Scott Depo., at 115.  Gulumani denies that Scott was ever his executive assistant.  Gulumani Depo., at 19.

[13]    *See* "Farouk Systems Restructures The *deep brilliance* Line," Exhibit C-7 to Motion (emphasis and capitalization original).  "Barbara Scott has been appointed as the deep brilliance Chain Account Manager for Sally's Beauty Company.  She will be responsible for
                                                                              (continued...)

having ever been a "manager" of the Deep Brilliance product line, but states she "was working with everyone and everything pertaining to Deep Brilliance," and "handled all the things for Deep Brilliance."[14]

Farouk terminated Scott's employment in April 2006.  In June 2006, she filed this lawsuit, alleging that she was a non-exempt employee during her tenure with Farouk and demanding back wages, liquidated damages, and attorney's fees and costs, as provided for by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  Farouk moves for summary judgment, contending that the limitations period prevents Scott from asserting an FLSA claim on the basis of her employment before June 2004, and that at least after that date she was an administrative employee and exempt from the FLSA.

## II.   LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also*

---

[13]      (...continued)
all national and international sales, coordination of education & technical support, support materials and marketing for Sally's Beauty Company." *Id.*  Sally's Beauty Company appears to be a wholly-owned subsidiary of Farouk, although there is no evidence of the corporate structure in the record.  Because Farouk does not dispute that Scott was one of its own employees while she worked with Sally's Beauty Company, the Court need not determine the relationship between the entities.

[14]      Scott Depo., at 123.

*Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

The initial summary judgment burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). When the moving party does not have the burden of proof at trial on an issue, that party need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

Where the movant bears the burden of proof at trial on the issue, as here, the movant "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If

the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts that show "the existence of a 'genuine' issue concerning every essential component of its

case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted)

## III.  ANALYSIS

### A.  Limitations Period

Farouk argues as one of its defenses that Scott's claims are subject to the FLSA's standard two-year limitations period, *see* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988), and not the three-year limitations period which applies to "a cause of action arising out of a willful violation" of the statute. An employer's conduct is

"willful" for these purposes when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin*, 486 U.S. at 134 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985)); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822 (5th Cir. 2003); *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994).  Scott pled a willful violation in her complaint,[15] but Farouk contends that she has failed to show a genuine question of material fact on this issue.

Scott argues first that Farouk "was paying other employees performing Plaintiff's same or similar duties an hourly rate," but "willfully refused to pay Plaintiff for her overtime hours."  She cites no authority, however, for the proposition that it is a willful FLSA violation to pay overtime to hourly employees but not salaried employees performing similar duties.  Nor has she established that the hourly employees she identifies were performing similar duties.  Scott identifies two specific co-workers, Tina Jackson and Theresa Wilt. Jackson, who was an "education coordinator," testified that she "set up classes out in the field" and arranged for "educators to teach those classes."[16]  She explained that setting up classes in the field meant that she would "get the paperwork from the salesperson; and I would contact an educator in that area, give them the information of the salon, the name, the numbers, who to contact, and wait for them to get back with me on a date and time for the

---

[15]     "Defendant knowingly, willfully or with reckless disregard carried out its illegal pattern or practice regarding overtime compensation and the payment of wages to Plaintiff."  Complaint [Doc. # 1], at 3, ¶ 10.

[16]     Deposition of Tina Jackson ("Jackson Depo"), Exhibit C to Response, at 12.

class."[17]   The salesperson "would actually set the class up," while Jackson entered the relevant information "into the system and then mail[ed] out or fax[ed] the confirmations."[18] She was paid hourly, and not a salaried employee.  Similarly, Wilt testified that she was "hooking up the field people to the trainings, getting their travel, getting their hotel."[19]

While Scott's work may have included some of the same tasks that Jackson and Wilt performed, she has not shown that these co-workers were employed in positions substantially similar to her own.  Jackson, unlike Scott, was not a licensed cosmetologist.[20]   Scott's equivalent hourly pay when she was hired was greater than either Jackson's or Wilt's hourly wages, even though those two had worked for Farouk for several years.[21]   Scott taught at Farouk's training sessions,[22] and was deeply involved with the Farouk "hotline" (a telephone number Farouk customers use to obtain technical assistance[23]), spending several hours a day as a technical adviser on that line from the time she was hired.[24]   Jackson did not teach

---

[17]     *Id*. at 13.

[18]     *Id*.

[19]     Deposition of Theresa Wilt ("Wilt Depo."), Exhibit D to Response, at 14.

[20]     Jackson Depo., at 8.

[21]     *Id*. at 12.

[22]     Scott Depo., at 48, 51.

[23]     *Id*. at 16.

[24]     *Id.* at 76.

classes,[25] and had nothing to do with the hotline.[26] Scott has therefore failed to show that her duties were substantially identical to those of Jackson or Wilt. Farouk's decision to pay overtime wages to dissimilar workers is not evidence that it willfully violated the FLSA. Even if those two employees were nonexempt,[27] Scott has not met her burden to establish a fact issue that Farouk was unreasonable in a belief that she was exempt from the FLSA overtime requirements.

Scott also asserts other arguments on this issue in passing. She asserts Farouk failed "to check a box for Plaintiff as to her Status, exempt or non-exempt," on her New Employee Information form.[28] She does not explain the significance of this omission, however. Nor does she indicate why the Court should see Farouk's decision to list an hourly rate on her Employee Form as relevant to the company's willfulness.[29] Although Scott argues that Farouk "was aware [of] and disregarded Plaintiff's entitlement to overtime pay but failed to keep records and pay overtime in accordance with the FLSA," she has not provided any evidence to support her assertion that Farouk was aware of an obligation to pay her overtime

---

[25]     Jackson Depo., at 15.

[26]     *Id.* at 16.

[27]     Scott has not established that, as a matter of law, they were nonexempt.

[28]     *See* Response, at 21 (citing Employee Form).

[29]     *See id.* Scott's Employee Form gave her annual salary, $35,000, as well as a calculation of her bi-weekly pay and a marginal notation of her equivalent hourly pay, $16.82691. *See* Employee Form. The calculation is not explained, but if accurate, it was made on the basis of a 43.33-hour work week.

and willfully violated the statute.[30]  Scott has failed to present evidence to establish that there

is a genuine fact question that any violation by Farouk of the FLSA was "willful."

Therefore, the two-year statute of limitations applies in this case.  Scott may not recover for

any claim that arose before June 29, 2004.  Scott's employment after this date covers part

of her time as an "education coordinator," as well as her subsequent positions with Farouk.[31]

### B.      Statutory Exemptions

Farouk asserts a defense to Scott's FLSA claim arguing that Scott was "an[] employee

employed in a bona fide executive, administrative, or professional capacity" because she was

an "administrative employee."  *See* 29 U.S.C. § 213(a)(1).  The administrative employee

exception is defined by 29 C.F.R. § 541.200(a), which applies the exemption to any

employee:

> (1)     Compensated on a salary or fee basis at a rate of not less than $455 per
> week . . . exclusive of board, lodging or other facilities;
>
> (2)     Whose primary duty is the performance of office or non-manual work
> directly related to the management or general business operations of the
> employer or the employer's customers; and
>
> (3)     Whose primary duty includes the exercise of discretion and
> independent judgment with respect to matters of significance.

Farouk has the burden to prove the exemption applies.

---

[30]      Response, at 21 (citing Employee Form).

[31]      *See* Response, at 23.

Scott concedes that, during the relevant period, she was a salaried employee paid at least $455 per week.[32]   The parties dispute only the last two factors.

**Performance of office work directly related to management or general business operations of the employer or employer's customers.**— Farouk argues that "all of Scott's duties at Farouk involved the performance of office or non-manual work related to the management or general business operations of Farouk or its customers," and therefore satisfies 29 C.F.R. § 541.200(a)(2).[33]   Scott contends that she does not meet this exception, because she was engaged in "production work."[34]   On the basis of the summary judgment record, the Court agrees with Farouk.

In *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990), the Fifth Circuit drew a distinction between "'the administrative operations of a business' and 'production.'"   *Id.* *Dalheim* cited and relied on 29 C.F.R. § 541.205(a) (1990).   Section 541.205 of the regulations is no longer the law, however.   It was deleted by a 2004 amendment and replaced by new language in §§ 541.202 and 541.203.   *See generally* 69 Fed. Reg. 22122, 22144 (April 23, 2004) ("final subsections 541.202(b) through (f) combine language from existing section 541.205"); *In re Farmers Ins. Exchange, Claims Reps. Overtime Pay Litigation*, 481 F.3d 1119, 1128 (9th Cir. 2007).   The new regulations clarify the distinction between administrative and "production" employees:

---

[32]      Response, at 4.

[33]      Motion, at 15 (underlining original).

[34]      Response, at 6 (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990)).

> To meet this [administrative] requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a).  Scott, in arguing she was involved in "production work," does not analyze the current regulations or argue that she was involved in the physical manufacture or production of Farouk's products.

Scott instead testified that as an education coordinator, she helped organize Farouk's efforts to train sales staff and professional customers[35] as well as market the products.[36]  She also testified that she spent most of her day "coordinat[ing] with the educators, talking with the salespeople, coordinating with the distributors."[37]  She further asserts that her job as an ESN coordinator "was to work with the salons that had signed up for the environment salon network program, . . . working with the information that had been submitted on [their purchases]" to coordinate the client salons' earned discounts.[38]  Scott testified that, later, working with the Deep Brilliance line, her work entailed "working with the distributors . . ., salons, the salespeople, technical calls."[39]  She agreed that these tasks involved marketing and communicating with clients – which are salons that sell Farouk products – through the

---

[35]     Scott Depo., at 77-78.

[36]     *Id*. at 109.

[37]     *Id*. at 77.

[38]     *Id*. at 109-110.

[39]     *Id*. at 124.

Farouk sales staff.[40]  Scott does not demonstrate how these tasks were "production" work.[41]

Nothing in the record suggests that Scott's duties were related to selling Farouk's product

in a retail or service establishment.[42]  As a matter of law, her duties were simply "work

directly related to assisting with the running or servicing of the business."  29 C.F.R.

§ 541.201(a); *see also Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006)

(employee who advised, represented and negotiated on behalf of employer was subject to

administrative exception).  There is no genuine issue of material fact that Scott's primary

duty was "the performance of office or non-manual work directly related to the management

or general business operations of the employer or the employer's customers," and Farouk is

entitled to summary judgment on the second prong of the administrative exception test.  29

C.F.R. § 541.200(a)(2).

**Exercise of discretion and independent judgment with respect to matters of**

**significance.**— The third characteristic of exempt administrative employees is that they

exercise discretion in matters of significance.  *See* 29 C.F.R. § 541.200(a).  "In general, the

exercise of discretion and independent judgment involves the comparison and the evaluation

of possible courses of conduct, and acting or making a decision after the various possibilities

---

[40]    *Id.* at 124, 125.

[41]    Gulumani's deposition testimony indicates that Scott's involvement with the production
process was limited to reporting the needs of customers and consumers to the product
development department  *See* Gulumani Depo., 15-17.

[42]    *See* Scott Depo., at 124 ("Q.  You were handling the sales aspects of Deep Brilliance?  A.
No.  The salespeople handled the sales.")

have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id*. § 541.202(a). The regulations provide a number of factors to take into consideration, such as "whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business," "whether the employee is involved in planning long- or short-term business objectives," and "whether the employee investigates and resolves matters of significance on behalf of management." *Id*. § 541.202(b); *In re Farmers Ins. Exchange*, 481 F.3d at 1123.

Farouk identifies various areas in which it contends Scott's work required that she exercise discretion and judgment, but does not cite to the record or otherwise submit evidence to show how significant those matters were. Nor does Farouk analyze Scott's duties chronologically, making it impossible for the Court to ascertain whether Scott's duties involving discretion encompassed the entire two-year period in issue. Scott submits an affidavit with largely conclusory averments,[43] as well as the deposition transcripts of Jackson and Witt[44] and copies of emails in which Scott seeks answers from senior Farouk employees or executives regarding numerous inquiries she received from others.[45]

---

[43]   Affidavit of Barbara Scott, Exhibit A to Plaintiff's Response.

[44]   Exhibits C and D to Plaintiff's Response.

[45]   Exhibits E and H to Plaintiff's Response.

Farouk argues that Scott "had the authority to formulate, affect, interpret or implement management policies or operating practices."[46]  It points specifically to Scott's role in developing the ESN program, contending that "she developed the program," helped create a data entry system for it, and created marketing materials for it.[47]  Farouk also notes that Scott, as an education consultant, "independently determined which educators" would be used "to conduct distributor training."[48] Farouk also identifies seven areas of Scott's work, such as her "major assignments in conducting operations of the business" and "work that affected business operations to a substantial degree."[49]  Farouk points also to Scott's "craft[ing] a 'Distributor Salon Opportunities & Salon Opening Promotions Package,' in which she developed pricing for Deep Brilliance products."[50]

While these arguments are persuasive, and may eventually be sufficient to establish to a factfinder that Scott was an administrative employee by the time she ended her employment with Farouk, the company has not demonstrated as a matter of law the absence of genuine questions of material fact on the exemption, a defense on which Farouk has the burden of proof.  Farouk has not established as a matter of law that Scott was not an exempt

---

[46]    Motion, at 18 (adopting language of 29 U.S.C. § 541.202(b)).

[47]    *Id*. at 19.

[48]    *Id*.

[49]    Motion, at 19-20.

[50]    Motion, at 22.  *See* Distributor Salon Opportunities & Salon Opening Promotions, Exhibit C-5 to Motion.  Scott testified that she drafted the document, and understood the published prices to be binding on Farouk.  Scott Depo., at 175-76.

employee at or during some portion of the two-year period in issue.  For instance, while setting binding prices for her employer's products demonstrates that Scott had "authority to commit the employer in matters that have significant financial impact," one of the tests for discretion under 29 U.S.C. § 541.202(b), there is no date or time frame given as to when Scott performed this task or what job she held when she did so.[51]

As a second example, Farouk's proof shows that Scott performed some duties that appear to demonstrate "discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.200(a), in that her duties — at some undisclosed point — involved "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id.* § 541.202(a).[52] Making non-binding strategic recommendations may qualify a worker as an administrative employee even when that advice is rejected, *see Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000); 29 C.F.R. § 541.202(b) (tests for employee's discretion include "whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business

---

[51]    Similarly, Farouk points to a list of tasks Scott drafted at an unknown date, in which she lists one of her ongoing tasks as "[w]orking on revisions to deep brilliance Manual, class formats, Educator Training information, guidebook, at home per Shauky."  *See* Projects Pending List, Exhibit C-3 to Motion.  Scott testified that she prepared the document; although she could not remember when it was written, from the due date of one of the tasks she surmised it was sometime before September 2004.  Scott Depo., at 148.

[52]    Scott testified, for instance, that after reviewing customer surveys, she formulated suggestions for improving the Deep Brilliance line; Farouk adopted at least some of Scott's ideas.  *See* Scott Depo., at 155.  However, it is unclear what discretion to make binding decisions Scott had in this connection.

objectives"), but Farouk's evidence is not of sufficient detail or clarity to establish the absence of any material question of fact in this regard.

Similarly, Farouk argues that Scott made significant decisions in her work on the hotline is inconclusive. Scott's deposition suggests that her role in fielding hotline calls was to give customers "technical assistance" with the help of a technical manual.[53] While her answers were unscripted, and Scott therefore exercised some nominal amount of discretion in resolving customers' concerns, the Court is not persuaded that Scott "investigated and resolved matters of significance on behalf of management" through her hotline duties. 29 C.F.R. § 541.202(b). Farouk demonstrates that Scott "investigated and resolved matters" regarding hotline inquiries, but the Court cannot rule as a matter of law that the "the level of importance or consequence of the work performed" made these "matters of significance." 29 C.F.R. § 541.202(a).

Farouk also relies on Scott's work to schedule training seminars. However, this evidence is not conclusive; it is not clear whether she exercised significant discretion in scheduling the seminars by deciding when and where they would be held, the contents of the training, and the like, or whether she merely applied policies and guidelines provided by Farouk.

In sum, Farouk has not shown the absence of a genuine question of material fact on the nature of Scott's duties during her employment, particularly early in the two-year period.

---

[53]      Scott Depo., at 53.

Farouk's summary judgment motion on its defense that Scott was an administrative employee is denied.  The resolution of this issue must await a determination at trial.

## IV.   **CONCLUSION**

Scott has failed to establish that Farouk's violation of the FLSA, if any, was willful. Thus, the two-year limitations period for FLSA claims applies to her claims.  As to the argument that Farouk is entitled to rely on the administrative employee exemption to the FLSA overtime pay requirements, Farouk has satisfied the first two elements but not the third.  Farouk has not shown as a matter of law that Scott's "duty include[d] the exercise of discretion and independent judgment with respect to matters of significance" throughout the two-year period in issue.  Accordingly, it is hereby

**ORDERED** that Defendant Farouk Systems, Inc.'s Motion for Summary Judgment [Doc. # 16] is **GRANTED in part and DENIED in part**.

**SIGNED** at Houston, Texas, this 8th day of **August, 2007.**

Nancy F. Atlas
United States District Judge